UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

U.S. DISTRICT COURT
DISTRICT OF MAINE
PORTLAND
RECEIVED & FILED

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Magistrate No. 18-mj- 219-GZS |
| ) | COMPLAINT FOR VIOLATION OF |
| v. ) | (21 U.S.C. §§ 846 and 841(a)(1)) |
| ) | |
| PATRICIA PIMENTAL ) | |

DEPUTY CLERK

## COMPLAINT

The undersigned complainant, being duly sworn, states:

### COUNT ONE

On about May 22, 2018 in the District of Maine and elsewhere, defendant

### PATRICIA PIMENTAL

knowingly and intentionally conspired with others, known and unknown, to distribute, and possess with the intent to distribute, 40 grams or more of a mixture or substance containing N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (commonly known as fentanyl), in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

It is further alleged that the penalty provisions of Title 21, United States Code, Section 841(b)(1)(B) apply to the conduct described herein.

The complainant states that this complaint is based on the attached affidavit which is incorporated herein by reference.

Justin Huntley
Task Force Officer
United States Drug Enforcement Administration

SWORN AND SUBSCRIBED TO before
me this 28th day of June, 2018.

George Z. Singal
United States District Court Judge

U.S. DISTRICT COURT
DISTRICT OF MAINE
PORTLAND
RECEIVED & FILED

2018 JUN 28 A 8: 33

DEPUTY CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

UNITED STATES OF AMERICA

v.

PATRICIA PIMENTAL
a/k/a "Mama"

Docket No. 2:18-mj- 219-GZS

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Justin Huntley, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Trooper with the Maine State Police and have been so employed since January 2013. I am currently on assignment as a Task Force Officer with the Drug Enforcement Administration (DEA), United States Department of Justice, with federal law enforcement jurisdiction, and have been in this position since October 2017.

2. In the course of my law enforcement training and experience, I have had an opportunity to search for, seize, and personally observe what I have recognized to be and what was later confirmed by drug analysis to be scheduled drugs, including but not limited to heroin, cocaine, crack cocaine, fentanyl and various narcotics lawfully available only by prescription. I have drafted a number of drug-related search and arrest warrants and have assisted in the execution of numerous search and arrest warrants in which controlled substances, drug paraphernalia, and other contraband were found. Through my training and experience, I have become familiar with the habits, methods, routines, practices and procedures commonly employed by persons engaged in the trafficking of illegal drugs.

3. I am aware that drug traffickers commonly use cellular telephones in furtherance of their drug trafficking activities and frequently change cellular telephone numbers and cellular telephones in an effort to thwart law enforcement's use of electronic surveillance. I am also aware that drug traffickers often speak in vague, guarded, or coded language when discussing their illegal business in an effort to further prevent detection.

4. I am personally familiar with the appearance of controlled substances, including fentanyl. Based on my training and experience, it is not uncommon for Maine drug distributors to travel to the area of Lawrence, Massachusetts to purchase distributable quantities of fentanyl, usually packaged in "fingers," at wholesale prices for retail distribution in the District of Maine.

5. I make this affidavit in support of a criminal complaint charging Patricia Pimental, a/k/a "Mama," with conspiracy to distribute, and possess with intent to distribute, a controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

6. The facts in this affidavit come from my personal observations and involvement in this investigation, my training and experience, and information obtained from other agents and witnesses.

7. Beginning in March 2018, DEA started receiving information from a cooperating defendant (hereinafter "CD#1") about his/her involvement in the distribution of suspected fentanyl in the District of Maine.[1] In sum and substance, CD#1 disclosed that he/she historically purchased large quantities of "heroin" from sources that he/she knew only as "Papa" and "Mama" from the area of Lawrence, Massachusetts. CD#1 distributed a portion of the "heroin"

---

[1] CD#1 is cooperating in the hopes of receiving prosecutorial and/or judicial consideration for felony drug-related charges relating to his/her involvement in the distribution of controlled substances. CD#1 was a drug user and has a significant criminal history. In April 2018, after he/she provided information to law enforcement, CD#1 engaged in unsanctioned criminal activity with targets of this criminal investigation without the knowledge or permission of DEA. CD#1 immediately notified DEA of the activity after it occurred; however, investigators were not in a position to act on this information. Nevertheless, investigators believe CD#1's information has been truthful, as it has been substantially corroborated by the investigation and other source information.

2

to customers in the District of Maine, including a subject identified as Dennis Ayala (hereinafter "Ayala"). According to CD#1, he/she facilitated Ayala's introduction to "Papa" and "Mama," and Ayala developed the ability to communicate directly with them. CD#1 also identified (603) 943-6947 as a contact number for "Mama," and a Facebook page in the name of "Jessy Gonzalez" as purportedly associated with her.

8. On May 22, 2018, CD#1 informed DEA that Ayala was in the process of coordinating a resupply trip to "Papa" and "Mama." Based on the information provided by CD#1, investigators coordinated a traffic stop of a northbound vehicle on Interstate 95 by the Maine State Police (MSP). The operator was the sole occupant of the vehicle. During roadside questioning, the operator admitted that he/she had drugs in the vehicle. Investigators searched the vehicle and located a large bag of suspected fentanyl in a bag. Inside the same bag, investigators observed a purported canister of WD-40; however, a closer examination of the WD-40 canister revealed that it contained a "stash" (hidden void). Inside the canister, investigators located a similar-sized plastic bag containing suspected fentanyl. Each plastic bag had a gross weight of approximately 101 grams as depicted in the photographs below:




9. The evidence was submitted to the DEA Northeast Regional Laboratory (NERL) where a chemist determined that the substance contained fentanyl with a net weight of 196.9 grams. Based on my training and experience, I believe that this quantity of fentanyl is consistent with distribution.

10. The operator elected to cooperate and will hereinafter be referred to as "Cooperating Defendant #2" or "CD#2."[2] In sum and substance, CD#2 disclosed that he/she was delivering the suspected fentanyl to Ayala. According to CD#2, he/she met Ayala earlier in the day, at which time Ayala used CD#2's cell phone to contact his source of supply and arrange the transaction. Ayala then provided CD#2 cash and directed him/her to travel to Massachusetts to purchase the fentanyl. According to CD#2, while in route to Massachusetts, a male subject with a Hispanic accent contacted him/her and directed him/her to a TJ Maxx in North Andover, Massachusetts. Inside TJ Maxx, CD#2 entered a restroom and met with a female who distributed the suspected fentanyl to him/her.

11. Investigators secured surveillance video footage from the TJ Maxx in North Andover, Massachusetts. A review of the surveillance video confirmed CD#2's presence. At approximately 14:56:13 hours on the surveillance video, a female wearing a distinctive black shirt, torn/ripped jeans, and carrying a handbag entered TJ Maxx. She walked directly toward the rear of the store where surveillance video captured her entering the hallway leading to the restrooms at approximately 14:57:34 hours. At approximately 14:58:22 hours, CD#2 entered the same hallway leading to the restrooms. At approximately 15:00:08 hours, the female emerged, followed by CD#2 at approximately 15:01:39 hours. CD#2 exited the store at approximately 15:04:42 hours without making a purchase. The female, who entered the restroom area shortly

---

[2] CD#2 is cooperating in the hopes of receiving prosecutorial and/or judicial consideration for charges that he/she anticipates are forthcoming based on the seizure. In order to facilitate his/her cooperation, investigators did not arrest CD#2; however, he/she has since been formally charged.

4

before CD#2, purchased several items with cash, including baby clothing, and exited the store at approximately 15:28:58 hours, as depicted in the following photograph:



12.     An investigator subsequently presented this image to CD#1, and CD#1 positively identified the female depicted in the surveillance image as "Mama." CD#1 had previously informed investigators that "Mama" recently had a baby. In furtherance of this investigation, CD#1 also accompanied investigators to Lawrence, Massachusetts, where he/she physically identified an apartment building on Shawsheen Road, Lawrence, Massachusetts, as the building where "Mama" resides. Investigators later determined the address of the building to be 101 Shawsheen Road, Lawrence, Massachusetts. According to CD#1, he/she had previously met with "Mama" at this location. CD#1 also informed investigators that "Mama" operated a black Jeep Liberty with a spare tire located on the rear of the vehicle. No vehicle matching that description was present when CD#1 identified "Mama's" residence.

13.     On June 12, 2018, unrelated to the DEA investigation, a detective with the Tewksbury, Massachusetts Police Department, acting in an undercover capacity (UC), contacted

5

a fentanyl source of supply known as "Jessy" and negotiated the purchase of three "fingers" of fentanyl for $660 U.S. currency.[3] At the appointed time, the UC observed a green Toyota Rav4 arrive at the meet location occupied by a female operator.[4] The UC entered the Rav4 and purchased three "fingers" of suspected fentanyl for $660 from the operator who concealed the suspected fentanyl in a baby formula container. Although the UC ordered "fingers," which are typically distributed in ten-gram cylindrical packages, the 33 grams of suspected fentanyl was packaged in a single bag, consistent with the evidence seized by DEA on May 22, 2018 in the District of Maine.

14. After the transaction was complete, Tewksbury officers conducted a traffic stop of the Rav4 and arrested the operator, who was determined to be Patricia Pimental (hereinafter "Pimental"), for Trafficking a Class A Substance.[5] The pre-recorded U.S. currency used by the UC to purchase the suspected fentanyl was located in her possession. According to the arrest report, Pimental's address is 101 Shawsheen Road, Apartment #8, Lawrence, Massachusetts, the same apartment building CD#1 identified.

15. Several days later, an investigator conducted a brief surveillance of 101 Shawsheen Road and observed a black Jeep Liberty ("Liberty") bearing Massachusetts registration 6LH159 parked near the apartment building. According to the Massachusetts Department of Motor Vehicles, the registered owner of the Liberty is Pimental with an address of 101 Shawsheen Road, Apartment #8, Lawrence, Massachusetts. When presented with the driver's license photograph of Pimental, CD#1 positively identified her as "Mama."

---

[3] Tewksbury PD contacted a different phone number than the one furnished for "Mama" by CD#1; however, based on my training and experience, I know that it is not uncommon for drug dealers to use multiple cellular phones and/or frequently change their devices to avoid detection.

[4] The Rav4 is registered to a female who resides at 101 Shawsheen Road, Lawrence, Massachusetts.

[5] According to MCI Framingham, Pimental was released on June 16, 2018.

6

16. "Mama" subsequently contacted CD#1 and provided (978) 902-0464 as her new phone number. According to T-Mobile USA / Metro PCS, this phone number was activated on June 14, 2018. A preliminary analysis of toll records for (978) 902-0464 revealed eight "common contacts" with (603) 943-6947, leading investigators to believe that the user of both phones is the same.

17. On June 25, 2018, at the direction of investigators, CD#1 placed a recorded call to (978) 902-0464 and spoke with a female who he/she identified as "Mama." During this call, "Mama" informed CD#1 that "…one of [unintelligible] customers, she set me up with a, with a cop." "Mama" also referred to her arrest receiving news coverage. Investigators confirmed that Pimental's arrest did receive coverage by several news affiliates in the Lawrence, Massachusetts area.

18. On June 26, 2018, "Mama" contacted CD#1 from (978) 208-9540 and informed him/her that this was the new number that "we" are going to be using. On June 27, 2018, a DEA undercover agent (UC) placed a recorded call to (978) 208-9540 and spoke to a male subject who spoke with a thick Hispanic accent. In response to a question, "What you need," the UC stated "ten." The male subject inquired if the UC wanted, "ten finger?" The UC responded, "10 fingers," and the male subject informed the UC, "1 finger is 220," which the UC understood to be $220 per "finger" or $2,200 for ten "fingers." Approximately two hours later, the UC received a call from (978) 208-9540 and spoke to a female. Based on a voice comparison, investigators believe that it is the same female CD#1 identified as "Mama" during the earlier recorded calls on June 25-26, 2018. During the call, "Mama" asked, "How much are you looking to get?" The UC responded "ten," and clarified, "He said 220, is that right?" "Mama" responded, "Yeah," and directed the UC to notify her when the UC was in route, and she would

send the UC a text message with the location where she would meet the UC. The UC informed "Mama" that he/she would call her when in route the following day (June 28, 2018).

## CONCLUSION

19. I respectfully submit, based on the facts set forth above, that probable cause exists to charge Patricia Pimental by Criminal Complaint with the offense of conspiracy to distribute, and possess with intent to distribute, 40 grams or more of a mixture or substance containing fentanyl, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and request that the accompanying Criminal Complaint be issued.

Justin Huntley
Task Force Officer, DEA

Sworn to before me and subscribed in my presence this 28th day of June, 2018.

George Z. Singal
U.S. District Court Judge